L. A. ANDREW, Receiver, Appellee, v. R. W. BOYD, Appellant.

No. 41236.

MARCH 8, 1932.

Talbott & Talbott, for appellant.

McNeil & Scovel and J. E. Scovel, for appellee.

1278

MORLING, J.—Plaintiff sues to recover upon a written stipulation of settlement between him as first party and defendant as second party whereby defendant agreed to convey to plaintiff a corn crop which was to amount to at least 1200 bushels, and if it did not amount to 1200 bushels defendant was to make up the difference at the price of 70c per bushel for the shortage. The stipulation (Ex. A) recites that among the assets of the bank were notes signed by Robertson (described) on which there is due $7683.88, "on all of which notes the said R. W. Boyd (defendant) is liable as surety," and recites that there were also among the assets notes signed by Sanders on which there is a total due of $1150.82, "on which notes the said R. W. Boyd is liable as surety." The stipulation recites that Boyd is indebted to plaintiff in the sum of $800 for stock assessment; that he is the owner of Iowa land described, and "also the corn crop on" other land described, and is the owner of a sixth interest in 320 acres in Canada. The stipulation further recites that the parties "are desirous of making a settlement as to the various indebtedness owing by the second party (defendant) to the first party (plaintiff)"; that it is agreed that Boyd shall convey to first party (plaintiff) an 80 acres and the undivided one-fourth of 320 acres described, subject to specified mortgages of $8,000 on one tract and share of $32,000 on the other, interest and taxes. The stipulation then recites that Boyd "is also to convey by bill of sale all of the corn crop on (the first described land) * * * for the year 1928, which corn shall amount to at least 1200 bushels and shall be delivered * * * to the town of Malcom * * * and in consideration of the conveyance last herein enumerated the party of the second part shall be given credit on the notes above outlined of E. C. Robertson, for the sum of $5550.00, and shall be released * * * of all liability on the notes of E. C. Robertson and O. B. Sanders, provided only that before said credit and release shall be in effect that said R. W. Boyd shall pay to first party the sum of $50 cash; that the said E. C. Robertson and his wife shall execute to the first party a chattel mortgage securing the balance of his said indebtedness * * * and the said O. B. Sanders and wife execute to the first party a new chattel mortgage conveying sufficient property to secure the payment of his debt of $1150.82. * * * and provided further that the second party shall convey * * *

all his right in and to 320 acres * * * in * * * Canada to the first party as surety for the balance of the notes of E. C. Robertson, the $800 stock assessment which he owes to the first party and to secure the delivery to the first party of the 1200 bushels of corn above mentioned, (we italicize) *but it is understood that said security in no way incurs the personal liability of second party as to said indebtedness*, except stock assessment. And the party of the second part shall also pay to the first party the stock assessment on the capital stock which he owns in the Malcom Savings Bank in the amount of $800 in cash, which sum shall be paid to the first party within six months from this date, provided only that in the event said six months elapses and a sum of at least $500 has been paid on said stock assessment, then that an extension of 60 days shall be granted * * *.

"It is also agreed that in the event there should not be 1200 bushels of corn * * * the difference between what is received in corn by the first party and 1200 bushels as agreed to be delivered, shall be made up to the first party by the payment to the first party of the sum of 70c. per bushel for any shortage * * *."

The answer is in three divisions. The first in addition to denial makes affirmative allegations and claims that the clause above italicized was added to the original draft of the stipulation to evidence the actual agreement that defendant should not be personally liable for any shortage. The second division alleges that defendant, after the insertion of the italicized clause, understood, as plaintiff knew, that defendant was not to be personally liable and that plaintiff is estopped to assert personal liability. The third division is a cross-petition. It incorporates by reference the allegations of the first division and claims reformation. The court struck from the first division the allegations setting up the oral agreement and the negotiations resulting in the insertion of the italicized clause and the allegation that by the contract as so corrected the defendant was not personally liable. The court struck out the second division of the answer asserting estoppel. It is sufficient to say here without elaboration that the court is of the opinion that at law the terms of the stipulation govern the matter of defendant's personal liability; that by those terms the defendant is personally liable for the shortage in the amount of the corn delivered at

the stipulated price of 70c per bushel; and that Division Two is insufficient as a plea of estoppel. The court, therefore, was not in error in striking from the first division or in striking out the second division.

The matter stricken from the first division, however, in connection with the allegations of the third division, is such as if proved to show that the actual agreement was that defendant was not to be personally liable, and the italicized clause was inserted to evidence that understanding, but by mutual mistake the contract as so written failed to express the true agreement. If the matter set up in these two divisions were proved, defendant would be entitled to reformation under Costello v. Stokely Grain Co., 193 Iowa 203, 205; In re Estate of Jenkins, 201 Iowa 423.

Plaintiff contends that the action of the court in striking from Division one erased the stricken allegations from the answer for all purposes, so that they were no longer any part of the answer, and they, therefore, were no longer a part of the third division (the cross-petition), which incorporated them merely by reference. But the intent and effect of Division Three was to make the allegations of Division One a part of Division three as fully as if they were rewritten therein in so many words. Those allegations were just as much a part of Division three as if they had been mechanically rewritten therein. It is true that a part of Division three was permitted to remain, and that defendant offered no evidence in support of his cross-petition for reformation; but his cross-petition was so mutilated as to take from it allegations essential to its efficacy. The ruling operated to remove the cross-petition from the issues. The court, therefore, erred in sustaining plaintiff's motion to strike Division three.

II. Defendant insists that the petition contains no allegation that he has failed to pay the value of the claimed shortage, and that if such an allegation may be inferred it is denied by the answer; that "it was incumbent on plaintiff to prove that there was default on the part of Boyd unless such default was admitted by defendant," and there is no "competent evidence that defendant did not pay the deficiency in money if there was any deficiency." The plaintiff to meet these contentions asserts that his allegation was that there was due him

from defendant $434.24; that this was a sufficient allegation of nonpayment by defendant; that defendant's general denial was contained in the same division of his answer which set up new matter, and must be disregarded (citing Miller v. Johnson, 205 Iowa 786); that defendant does not allege payment as a defense, and in the absence of denial, plaintiff's allegation was sufficient to entitle him to the judgment rendered.

We deem it unnecessary to consider the question whether the affirmative allegations of Division One were, as the answer was originally filed, such as to admit the cause of action and nullify the denial, within the principle of Miller v. Johnson, 205 Iowa 786. Those allegations were stricken out on plaintiff's motion. As the issues stood at the time of the trial the answer consisted of the specific admissions and the (otherwise) general denial, uncomplicated with any affirmative defense. In accordance with plaintiff's contention we shall assume, without deciding, that he sufficiently alleged nonpayment (see Brenton Bros. v. Hill, 197 Iowa 125), but his allegation of nonpayment was denied.

III. While the authorities on the subject are not uniform, and it is frequently said without qualification that payment is an affirmative defense, yet this Court in the recent case of Brenton Bros. v. Hill, 197 Iowa 125, on elaborate consideration of the authorities said:

"This court is firmly committed to the rule that, in actions upon contract where the breach relied upon for a recovery is a failure to pay according to the terms of the contract, and nonpayment is alleged, the burden is upon plaintiff to establish such non-payment, even though defendant has pleaded payment."

In that case plaintiff alleged that a stated amount remained due. The answer was a general denial. It must follow as the rule there adopted that plaintiff must plead breach of the contract to pay and must prove breach as alleged. See also Northern Lumber Co. v. Clausen, 201 Iowa 701.

As pointed out in the Brenton case, and in Crouch v. National Livestock Remedy Co., 205 Iowa 51, when the action is in tort, payment is an affirmative defense, which must be pleaded and proved by defendant. In an action for breach of a contract to pay money, however, "non-payment constitutes the very

breach of the contract sued for and without allegation of nonpayment plaintiff does not'' show cause of action. Howerton v. Augustine, 130 Iowa 389.

It follows that when the parties rested the plaintiff had not made out a case, and the judgment is not sustained by the evidence. As the case was transferred to equity and triable here *de novo,* it must be held that the plaintiff, on the evidence, was not entitled to recover.

We are not to be understood as determining whether the allegations of the petition, taken together, may be held, in the absence of attack, to sufficiently plead nonpayment. See Brenton Bros. v. Hill, 197 Iowa 125. On the whole we think the cause should be remanded for further proceedings not inconsistent with this opinion.—Reversed and remanded.

EVANS, STEVENS, ALBERT, KINDIG, and GRIMM, JJ., concur.