IDA E. WRIGHT v. PATRICK J. TOWLE ET AL.

*Fraudulent conveyances—Evidence—Reference to bank and memorandum books—Husband and wife—Statements of husband—Charge to jury—Directing verdict.*

1. In a case involving the validity of a mortgage under which plaintiff claimed, and which was assailed as given without consideration, the plaintiff, on cross-examination, was interrogated fully as to what she paid for the mortgage, and the dates and amount of such payments, and the money received by her, and who from, and on redirect her counsel sought to introduce her bank-book for the purpose of showing the receipt by her of the money, and the dates, and also a book containing a statement of the amount of money she had paid, which books were excluded by the court.

     *Held*, that *both* books were admissible for the purpose offered, and should have been received.

2. It does not necessarily follow that vendors who sold and shipped goods to a mortgagor with notice of such incumbrance are precluded from attacking it as given in fraud of their rights, or for the purpose of defrauding them.

3. A wife cannot be bound by the unauthorized statement of her husband regarding her separate property; but where she claims title to such property under a contract from him, alleged to be fraudulent as to his creditors, whatever he did or said tending to show such fraudulent character is proper testimony, if brought to the knowledge of the wife.

4. The statement by the court, in his charge, that a conversation took place between certain parties, is not error, the fact being undisputed.

5. A debtor may always give a *bona fide* security for any claim against him.

6. It is grave error for the trial court, in his charge to the jury, to say, "I never take a case from the jury unless counsel request it," and that the court "will direct a verdict for the defendants if counsel desire it;" the case being one for the jury upon the facts, and the *effect* of such statement being not far different from directing such verdict.

Error to Wayne. (Jennison, J.) Argued June 9, 1887. Decided October 20, 1887.

Replevin. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Haug & Springer,* for appellant.

*Corliss, Andrus & Leete,* for defendants.

SHERWOOD, J. Wright Brothers, on or about the fourth day of April, 1885, gave a mortgage to the plaintiff on a stock of goods, to secure the payment of a note of $700 for money obtained about a year before, the note being payable on demand.

The firm of Wright Brothers was composed of Cyrus Wright, who was husband of the plaintiff, and his brother, Charles O. Wright; and the firm, in the month of March, 1886, were unable to pay the note and mortgage. The plaintiff demanded payment, but failed to obtain the same, and thereupon commenced a foreclosure of her mortgage by taking possession of the mortgaged property, the mortgagors turning it out to her upon her claim.

The plaintiff had been in possession of the goods about four or five days, as she testifies, when the defendants, having obtained a judgment against her husband and his brother for goods sold, took out execution thereon, and levied it upon the goods of the plaintiff thus taken and turned out to her upon the mortgage, and took possession of the same, and locked up her store. Defendants refused to deliver the goods to plaintiff on demand, and, after keeping them several days, the plaintiff brought this suit for their recovery in the Wayne circuit court, where the cause was tried before a jury, and the defendants were allowed to recover the amount of their execution, $42.72, and the plaintiff brings error.

Two errors are assigned upon the rulings of the court in rejecting testimony offered upon the trial.

It was the contention of the defendants that the mortgage was fraudulent as against the creditors of Wright Brothers, that the plaintiff gave no consideration for the same, and that she never took possession of the mortgaged property; and, for the purpose of showing these three things, she was cross-examined at considerable length.

Among other things it appeared from her testimony that she and her husband lived in the second story of the building occupied as a store; that when she was married she had five or six hundred dollars of her own money, and an interest in a farm, and since has obtained an interest in a house and lot in Detroit; that, the year before the mortgage was given to her, she loaned Wright Brothers $100, and that her mother-in-law loaned to them $600; that when she took the security the mother-in-law desired her to take it for both amounts, and transferred the $600 claim to the plaintiff, and took plaintiff's note back for the same, and the plaintiff took the mortgage for $700. .

On her cross examination the plaintiff was interrogated as to what she gave for the mother-in-law's claim, and as to what moneys she had paid upon the note given to the mother-in-law, and the amount thereof, and dates, before the defendants levied upon the goods, and the moneys she had received, and who from.

On the redirect examination the plaintiff's counsel sought to introduce her bank-book for the purpose of showing the receipt of the money, and the dates. This was not permitted by the court, and plaintiff's counsel excepted. The court also refused to allow the witness to produce the book containing a statement of the amount of money she had paid to her mother-in-law before the defendant's levy upon the goods.

Under the circumstances of this case, the proof should have been permitted. The cross-examination of the plaintiff upon this subject was evidently made with a view to discredit

67 MICH.—17.

the plaintiff's testimony, and in the re-examination she should have been permitted to give such facts in evidence as would tend to support her statements, and remove any impressions in that direction the cross-examination may have made. What the plaintiff paid, and promised to pay, the mother-in-law, constituted the consideration she paid for the mortgage, and which these defendants sought to impeach by showing no consideration. The testimony offered was not only proper, but material. Both books were admissible for the purpose offered and should have been received. This disposes of the twelfth and thirteenth assignments of error.

The plaintiff requested the court to instruct the jury as follows :

"1. It appears from the evidence that Wright Brothers, grocers, April 4, 1885, executed and delivered a chattel mortgage for the sum of $700 to the plaintiff, who is the wife of one of the firm.

"2. Mrs. Wright testifies that she actually loaned this money to the firm; that part of the money ($600) was originally loaned by the mother-in-law to her two sons, without security; that afterwards Wright Brothers gave her a note for $700, and she gave her mother-in-law a note for $600, upon which she has paid interest, and something like $200 of the principal.

"3. It appears also that this mortgage was given some time before the defendants trusted the firm of Wright Brothers, and was on record, and that the defendants had full notice thereof at the time the goods were sold and shipped. The defendants, therefore, cannot say that this mortgage was *given* in fraud of their rights, or for the purpose of defrauding them.

"4. There is nothing here that disputed that this mortgage was given to secure to Mrs. Wright the payment of $700, money actually loaned Wright Brothers. It makes no difference about the $600 originally loaned the firm, if Mrs. Wright purchased her mother-in-law's claim, or gave her personal note for it; and there is no evidence to dispute that fact. The note that she says she gave is valid and binding on her.

"5. The claim that this mortgage was given to secure is a *lawful claim,* and if Wright Brothers turned their stock of

groceries over to Mrs. Wright, the plaintiff, in payment of this claim, they did nothing more than they had a perfect right to do, for a debtor may prefer any one or more creditors . *lawfully* under the laws of this State.

" 6. It is of no consequence what Mr. Wright, the husband of the plaintiff, may have said about this mortgage to third parties for the purpose of obtaining goods or for any other purpose; that would not affect or invalidate her claim.

" 7. There is nothing to dispute the evidence here of the plaintiff's possession of the goods, nor the fact that they were turned over to her in satisfaction of her claim as far as they would go towards paying it. I charge you, therefore, as a matter of law, she has a right to maintain this action, and the only thing left for you to consider is the damage she has sustained by the wrongful seizure of the goods by the defendants. As to her damage, you have heard the evidence of the value of goods that spoiled while defendants had possession, and your verdict will be according to such value."

The first request was sufficiently given by the court.

In view of the course taken by the court in the charge, the plaintiff's second request should have been given. So much of the testimony as was referred to and particularly pointed out by the court in the charge on the part of the defendants fully warranted the counsel for the plaintiff in making this request, and made it the duty of the court to comply with the request.

The third request was properly refused. I do not think, as a matter of law, the conclusion reached in the request necessarily follows from the facts stated therein.

The plaintiff's fourth request should have been given, for the reasons stated why the second request should have been complied with. It further states the facts correctly upon which the conclusions of law were based, and they are undisputed as claimed.

The plaintiff's fifth request on the undisputed facts should have been given. No witness denies that Wright Brothers had the money as claimed by the plaintiff, nor that the mortgage was given to secure it. C. O. Wright is the only witness who, in giving testimony, cavils upon that subject,

and he finally admits, upon his cross-examination, that the mortgage was given to secure the payment of the $700 to the plaintiff.   *Leppig v. Bretzel.* 48 Mich. 321.

It is true the wife cannot be bound by the unauthorized statements of her husband regarding her separate property. *Dawson v. Hall,* 2 Mich. 390; *Glover v. Alcott,* 11 Id. 470; *King v. Moore,* 10 Id. 538; *Benson v. Morgan,* 50 Id. 77; *Gavigan v. Scott,* 51 Id. 373.

But it must be recollected in this case that the wife's right to this property is derived by contract with parties, one of whom is her husband.   It is not the case of a wife claiming title or possession by virtue of an act of the Legislature.   And it is this contract under which she claims that is alleged to be fraudulent; and whatever he did or said which would have a tendency to show the contract fraudulent would be proper testimony, if brought to the knowledge of the plaintiff; and the plaintiff's sixth request should have had added to it, "if what he said was unknown to and unauthorized by her, and she took the security in good faith," before it would have been proper for the court to have given it to the jury.

As the record now stands upon the testimony returned, the plaintiff's seventh request was correctly refused.

The eighth assignment of error relates to a reference to the fact, by the court, that Cyrus Wright talked with Mr. Austin, the defendant's salesman, after he sold the bill of goods to them, and before they were delivered, about the mortgage.   There was no impropriety in this, as the fact stated by the court was undisputed upon the testimony.

The ninth assignment of error is that the court charged the jury, in substance, that a mortgage given for a precedent debt was not a *bona fide* incumbrance as against creditors. This was erroneous, and prejudicial to the plaintiff's case. *Jordan v. White,* 38 Mich. 252.

"A debtor may always give a *bona fide* security for any claim against him."

The court offered to direct a verdict for the defendants if their counsel desired. The court, turning to counsel near the close of his charge said:

"I never take a case from the jury unless counsel request it. I will direct a verdict for the defendants if counsel desire it."

This was serious error. It was certainly a case for the jury upon the facts, and the court might as well have directed the verdict for the defendants as to say what he did. The effect upon the jury could not have been far different. The proposition ought not to have been made. *Railroad Co. v. Judson,* 34 Mich. 507; *People v. Simpson,* 48 Id. 478; *Cronhite v. Dickerson,* 51 Id. 179. This was the plaintiff's tenth assignment of error.

All the questions raised have now been considered, and for the errors stated the judgment must be reversed, and a new trial granted.

CAMPBELL, C. J., and MORSE, J., concurred.

CHAMPLIN, J. I do not think the court erred in not permitting the witness Ida E. Wright to introduce her own books of account or the bank-book for the purpose of corroborating her own testimony.

I concur in the result reached by the majority of the Court.