ALPHIN v. WADE.

Opinion delivered February 15, 1909.

HUSBAND AND WIFE—AUTHORITY OF MARRIED WOMAN TO BECOME SURETY.—
A married woman, who is a stockholder and president of a corporation engaged in mercantile business, is liable on a note which she signed in her individual capacity as surety for borrowed money which went into the business of the corporation.

Appeal from Union Circuit Court; *George W. Hays,* Judge; affirmed.

STATEMENT BY THE COURT.

At the September term, 1907, of the Union Circuit Court, Mrs. Mattie C. Wade brought this suit against Garrison-Alphin Hardware Company, a corporation, J. H. Garrison, Mrs. A. L. Alphin *et al.,* on the following promissory note:

"$1,000.00.                    El Dorado, Arkansas, Jan. 10. 1903.

"On the 10th day of January, 1904, after date, we, or either of us, promise to pay to the order of Mattie C. Wade the sum of one thousand and no-100 dollars, value received, with interest at the rate of ten (10) per cent. per annum from date until paid.

> "Garrison-Alphin Hardware Co.
>     "E. P. Garrison, Sec'y.
>     "E. H. Smith,
>   "J. H. Garrison,
>     "A. L. Alphin."

Credit indorsed, $100.00 Jan. 10, 1904.

The complaint alleged that the loan represented by the note was made by plaintiff to the Garrison-Alphin Hardware Company, a corporation, and signed by the other defendants, as sureties; that A. L. Alphin was at the time she signed said note, and still is, a married woman; but that her act in signing the note was done by her for her own benefit and the benefit of her separate estate.

At the same term of court judgment for want of an answer was taken against Garrison-Alphin Hardware Company and J. H. Garrison. Mrs. A. L. Alphin filed a separate answer to plaintiff's complaint, in which she alleged that the note sued on

was given for one E. P. Garrison, who received the full consideration thereof, and that Garrison-Alphin Hardware Company, herself and the other parties whose names appeared on the note as having executed same were in fact accommodation makers. She further alleged that at the time her name was signed to the said note she was, and since had been, a married woman; that she did not receive any personal benefit therefrom nor any of the proceeds thereof; that the same was not executed with reference to nor connected with her separate business, and she therefore especially pleaded the disability of coverture.

Appellee contends that the note in controversy was given by the corporation, and was signed by A. L. Alphin, a stockholder and president of the concern, as surety; that in signing this note she was dealing with respect to her separate estate, and is bound. Appellant contends that the note was signed by the corporation, herself and other parties as accommodation makers for E. P. Garrison, who in this manner procured funds with which to buy one thousand dollars corporate stock of the Garrison-Alphin Hardware Company.

There was evidence tending to support their respective contentions. The court, over the objection of appellant, in effect told the jury to return a verdict in favor of appellee if they found the facts to be as she contended; but, on the other hand, to find in favor of appellant, if the facts were as she contended. The jury returned a verdict in favor of appellee, judgment was entered accordingly, and this appeal duly prosecuted.

*H. S. Powell,* for appellant.

The common-law disabilities of married women to contract are in force in this State, except in so far as they have been removed by statute. Art. IX, § 7, Const. 1874; Kirby's Digest, § § 5209, 5214; 66 Ark. 117; 32 Ark. 776; 29 Ark. 351. The fact that the statute increases her power to contract does not raise a presumption, in the absence of evidence to the contrary, that a contract made by her comes within the exception. 58 Ark. 484. The power of a married woman to contract is restricted to her separate estate, and must be in direct reference thereto. She cannot contract 'generally. Her note given as security for the debt of another would not bind her nor be en-

forced against her property. 64 Ark. 385; 62 Ark. 152; 43 Ark. 164; 35 Ark. 365; 66 Ark. 437; Id. 117. A corporation is a separate and distinct entity, and business transacted by it was not the business of appellant but of the corporation, by which she could be affected only in proportion to her stock interest. In order to bind her separate estate, the proceeds of the note should have "passed to her as her own property to do with it as she pleased." 78 Ark. 275.

J. B. Moore, for appellee.

1. The evidence establishes the fact that appellant owned 107 of the 400 shares of the capital stock of the corporation and that through the corporation she was engaged in business for the benefit of her separate estate to the same extent and with like effect as if the concern had been a partnership. 43 Ark. 212 and 216-217; 1 Beach, Private Corp. § 139; 3 Thompson, Corp. 3857; 2 Purdy's Beach on Priv. Corp. 708; 133 U. S. 138; 78 Ark. 517, 519 and 520.

2. If the loan for which the note was executed by appellant as security for the corporation was also for her benefit and that of her separate stock, a part of her separate estate, then she is liable as surety. 1 Beach on Railways, Pony Series, § 60; 2 Beach, Private Corp. § § 465, 466; 66 Ark. 438; 52 Ark. 238; 30 Ark. 727; 62 Ark. 152; Id. 155.

WOOD, J., (after stating the facts.) The jury, upon sufficient evidence, having found the facts in favor of appellee, the only question left for our consideration is whether or not a married woman who is a stockholder and president of a corporation engaged in mercantile business is liable on a note which she signed in her individual capacity as surety, the note having been executed by the corporation for borrowed money which went into its business?

Section 5214 provides that "a married woman may bargain, sell, assign and transfer her separate personal property, and carry on any trade or business, and perform any labor or services on her sole and separate account; and the earnings of any married woman from her trade, business, labor or service shall be her sole and separate property, and may be used and invested by her in her own name; and she may alone sue or be sued in

the courts of this State, on account of the said property, busi-
ness or services." We have held that the effect of this statute
"is to invest her with all the rights, powers and privileges of a
*feme sole* in respect to her separate business and the property
invested therein, and to subject her to the liabilities she would
be subject to in respect thereto if she were unmarried." In
other words, her contracts with reference to her separate busi-
ness create a personal liability against her. *Sidway* v. *Nichol*,
62 Ark. 146; *Hickey* v. *Thompson*, 52 Ark. 234, 238; *Trieber*
v. *Stover*, 30 Ark. 727. This statute does not give her power to
contract generally, and therefore she has no power to sign notes
as surety for the debts of another. *Sidway* v. *Nichol, supra*.
But it does give her power to sign notes for debts of her
own contracted with reference to her separate business. *Hickey*
v. *Thompson, supra*. When a married woman invests her sep-
arate estate in the stock of a mercantile corporation, she be-
comes, to the extent of her investment—the shares of her stock
—interested in the business of that corporation on her own ac-
count. To that extent she shares in its dividends, and to the
extent she is interested is engaged in her own separate business.

Chief Justice Shaw in defining a share of stock says: "The
right is, strictly speaking, a right to participate, in a certain
proportion, in the immunities and benefits of the corporation;
to vote in the choice of their officers, and the management of
their concerns; to share in the dividends of profits; and to re-
ceive an aliquot part of the proceeds of the capital on winding
up and terminating the active existence and operations of the
corporations." *Fisher* v. *Essex Bank*, 71 Mass. 373, 378. See
also *Neiler* v. *Kelley*, 69 Pa. St. 403, 407; *Bridgman* v. *Keokuk*,
72 Ia. 42; 1 Cook on Corporations, § 12. If a married woman
have her entire separate estate, for instance, invested in the
shares of a corporation and becomes the president of the cor-
poration, can it be said that she is not engaged in her separate
business simply because the corporation for certain purposes
in law has a separate entity from the individuals who own its
stock? I think not. Therefore, when she signs a note as surety
for the corporation in which she has purchased stock on her
own account with funds of her separate estate, she becomes lia-

ble, in case of default of the corporation, for the debt which she has made her own.

We are aware that a different view obtains by an eminent authority (Judge Cooley) in Michigan. See *Russel* v. *People's Saving Bank,* 39 Mich. 671, and cases cited.

But the views we have expressed, we believe, are in accord with the better reason, and they are certainly more in harmony with the trend of our own decisions based upon the peculiar language of our statute.

In *Crenshaw* v. *Collier,* 70 Ark. 5, a husband had a policy of life insurance payable to his wife and daughter in equal parts. He and his wife executed a note to one who paid the dues on the policy to secure him for the money thus advanced, and this court held that the note was valid against the wife, so far as it was for the benefit of her separate estate. It was the husband's investment in the policy, but for her benefit. She had the right to preserve her interest in it by executing her note to one who advanced the money to keep the policy alive. So here appellee had the right to secure one who advanced money to promote the profits of a corporation in which she owned stock and was a beneficiary of any profits to that extent.

We have held that a married woman under the above statute can form a partnership as a sole trader with a third person, and become liable for all the contracts of the firm as effectually and to the same extent as if she were a man. *Abbott* v. *Jackson,* 43 Ark. 212, 216, 217. By analogy the same principle applies here, although a corporation differs radically from a partnership.

In *Arkansas Stables* v. *Samstag,* 78 Ark. 520, we said: "In virtue of their stockholding, they are eligible to corporate office, which is always desired for its emolument or to protect, care for and watch over the interest in the corporation owned by the officer or for both reasons. It follows that she is acting in behalf of her separate estate or earning a separate income, and in these respects she is freed of her coverture."

The judgment is affirmed.